REISSUED FOR PUBLICATION

JUL 8 2020
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

(Filed: April 27, 2020)

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *    *
                                               *
ROBERT LANG,                                   *      UNPUBLISHED
                                               *
              Petitioner,                      *      No. 18-1247V
                                               *
v.                                             *      Special Master Katherine Oler
                                               *
SECRETARY OF HEALTH                            *      Dismissal Decision; Influenza ("Flu")
AND HUMAN SERVICES,                            *      Vaccine; Brachial Neuritis.
                                               *
              Respondent.                      *
                                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *    *
```

*Robert J. Lang*, *pro se*, Lancaster, CA, for Petitioner.
*Heather L. Pearlman*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION DISMISSING CASE[1]

## I.    INTRODUCTION

On August 8, 2018, Robert Lang ("Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 *et seq.* (2012).[2]  Petitioner alleges that he suffered Parsonage Turner syndrome, also known as brachial neuritis, as a result of an influenza ("flu") vaccine administered to him on October 4, 2017.  Petition at 1.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012).  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

After carefully analyzing and weighing all of the evidence presented in this case in accordance with the applicable legal standards, I find that Petitioner has not met his legal burden. Petitioner has failed to demonstrate that he suffered a "defined and medically recognized injury"[3] and has failed to provide evidence of a sound and reliable medical or scientific theory establishing that the vaccine at issue caused the alleged injury. Accordingly, Petitioner is not entitled to compensation and his petition is dismissed.

## II.   PROCEDURAL HISTORY[4]

Petitioner filed his claim on August 8, 2018, containing his vaccination records and medical records. *See* Petition (ECF Nos. 1-1 to 1-8). On August 21, 2018, this case was assigned to then-Special Master Brian Corcoran. (ECF No. 4). Petitioner filed additional medical records on September 6, 2018. (ECF Nos. 7-1 to 7-5). An initial status conference was held on October 23, 2018. Petitioner filed a Statement of Completion on November 1, 2018. (ECF No. 9). On January 11, 2019, the Court filed a Scheduling Order directing Petitioner to continue filing appropriate medical records and extending Respondent's Rule 4(c) Report deadline. Scheduling Order dated Jan. 11, 2019 (ECF No. 12). On February 20, 2019, the Court issued an Order granting Respondent's motion for extension of time and again encouraged Petitioner to continue submitting medical records. Order dated Feb. 20, 2019 (ECF No. 14). Petitioner filed a Motion for Schedule on March 14, 2019. Petitioner's ("Pet.") Motion (ECF No. 15). In his Motion, Petitioner requested a firm date for Respondent's Rule 4(c) Report. *Id.* at 1. Petitioner also stated that he filed his Statement of Completion and therefore "has no further obligation to respond" and "[a]ll of the Petitioner's documents have been filed." *Id.*

A status conference was held on March 27, 2019. During the status conference, Respondent identified that Petitioner was missing: (1) medical records from three years prior to vaccination; (2) the vaccine administration record for the vaccine in question; and (3) medical records from the six months following vaccination. *See* Scheduling Order dated Mar. 28, 2019 (ECF No. 17). The Court set Respondent's Rule 4(c) Report deadline for April 30, 2019, with no more extensions, and directed Petitioner to file the missing and incomplete records immediately. *Id.* at 1-2. Petitioner then filed additional medical records and another Statement of Completion. (ECF Nos. 18-20, 22).

Respondent thereafter filed a Rule 4(c) Report without medical analysis on April 30, 2019. Respondent's ("Resp.") Report (ECF No. 23). Due to the high volume of petitions pending in the Program, the Division of Injury Compensation Programs was unable to evaluate Petitioners' medical records by the time the Court required the report. *Id.* at 1-2. The Court then filed a Scheduling Order setting a status conference for May 10, 2019. Scheduling Order dated May 7, 2019 (ECF No. 24).

---

[3] *See Lombardi v. Sec'y of Health & Human Servs.,* 656 F.3d 1343, 1354 (Fed. Cir. 2011); *see also Broekelschen v. Sec'y of Health & Human Servs.,* 618 F.3d 1339, 1345-46 (Fed. Cir. 2010).

[4] Petitioner filed medical records and other documents using identical Exhibit numbers. To avoid confusion, this Decision will cite to the docket number.

On May 9, 2020, Petitioner filed a document entitled "Entitlement to Compensation" stating that "petitioner claims $500,000.00 for pain and suffering" due to the alleged vaccination injury.  Pet. Entitlement Report (ECF No. 25).  A status conference was held on May 10, 2019.  During the status conference the Petitioner was ordered to file an expert report by August 9, 2019 to prove causation-in-fact.  *See* Scheduling Order dated May 13, 2019, at 1 (ECF No. 26).  The special master explained to Petitioner his claim was not a Table Claim and therefore had to establish by preponderant evidence that the vaccine was the cause-in-fact of the Petitioner's alleged injury.  *Id.*  On May 28, 2019, Petitioner filed a Response to the Court's Order providing that "[c]ausation was addressed at the outset of the claim and included in the first filing known as the Petition."  Pet. Response ("Resp."), filed May 28, 2019, at 1 (ECF No. 27).  Petitioner also stated that:

> For either practical or ethical purposes, the petitioner has already replied in email correspondence the obvious cause of brachial neuritis from flu vaccine that everybody knows.  This is the one that all people are aware of who work in the field of vaccine injury such that there is no reason to expound on an established database of knowledge.

*Id.*

On July 26, 2019, Respondent filed a Supplemental Rule 4(c) Report arguing against compensation.  Resp. Supplemental Report (ECF No. 29).  Petitioner did not file an expert report by August 9, as previously ordered.  On August 15, 2019, the Court issued an Order for Petitioner to contact the special master's chambers.  Order dated Aug. 15, 2019 (ECF No. 30).  The Order stated that after Petitioner's August deadline to file an expert report passed with nothing filed, the special master's chambers attempted to set up a status conference, but Petitioner emailed the Court refusing to participate in such a conference.  *Id.*  In response to the Court's Order, Petitioner filed a Response to the Order stating, "[a]ll documents filed by the Petitioner comprise an 'expert report'.  The entire issue of a vaccine claim involves accurately reporting an incident, cause and effect, symptoms, diagnoses, and treatment.  Therefore, each and every document filed contains expertise."  Pet. Resp., filed Aug. 28, 2019 (ECF No. 31).  He concluded, "[b]ecause the Petitioner's case information has been completed, he will no longer be attending status meetings." *Id.*

On September 11, 2019, the Court issued a Scheduling Order setting a briefing schedule for a Ruling on the Record.  Scheduling Order dated Sept. 11, 2019 (ECF No. 32).  The Order stipulated that "[g]iven Petitioner's refusal to participate in further status conferences and his desire to proceed without filing an expert report, the only remaining means for resolving the claim is by ruling on the record.  To that end, I am setting forth a schedule for briefing the claim." *Id.* at 2.  The Order stated, "Petitioner shall file a Brief in support of his claim on or before December 2, 2019." *Id.*  On October 2, 2019, the case was reassigned to Special Master Dorsey.

On October 24, 2019, Petitioner filed an "Election of Vaccine Injury Compensation Payment" and a "Letter from Robert L. Lang."  Election (ECF No. 36); Pet. Letter (ECF No. 38).  In the Election, petitioner again asked for $500,000.00 in pain and suffering in two installments of $250,000.00.  Election (ECF No. 36).  In Petitioner's Letter, he stated that his case was

"mishandled" and he "should be receiving a first payment by the end of this year." Pet. Letter (ECF No. 38). On October 25, 2019, Special Master Dorsey issued a Scheduling Order reaffirming that Petitioner's brief was due on or before December 2, 2019. Scheduling Order dated Oct. 25, 2019 (ECF No. 37). On November 14, 2019, Petitioner filed his "Petitioner's Brief: Claim by Default." Pet. Brief (ECF No. 39). Petitioner claimed that "there is no verification that the Respondent properly evaluated or correctly handled the records. The Respondent has only shunned the Petitioner's case with a tort panel, and there is no indication of an expert or qualified medical evaluation." *Id.* at 1. Petitioner then asserted, "[a]s it stands, the Respondent made no defense against the Petitioner's claim, and the Petitioner wins by default." *Id.*

On January 3, 2020, Respondent filed a Response to Petitioner's Brief. Resp. Brief (ECF No. 40). Respondent's brief indicated that Petitioner had repeatedly failed to file pre-vaccination records and his current medical records failed to establish any of the *Althen* prongs. *Id.* at 4-6; *See Althen v. Sec'y of Health & Human Servs.,* 418 F.3d 1274, 1278 (Fed. Cir. 2005).

On January 14, 2020, Special Master Dorsey issued an Order to Show Cause. Order to Show Cause (ECF No. 41). She ordered Petitioner to submit any evidence showing why his petition should not be dismissed. *Id.* at 2. The Order stated, "Failure to file any response to this Show Cause Order by Monday, March 16, 2020 will be interpreted as an inability to provide supporting documents for this claim and the petition shall be dismissed." *Id.* On March 3, 2020, in response to the Order to Show Cause, Petitioner refiled his previous medical records renaming them as "2019 Medical Test Report/Expert Report (Statement of Cause)." Pet. Report (ECF No. 42). In his report, Petitioner stated:

> [T]he very obvious evidence of a vaccine injury is the number of legal documents that were corresponded through the court, and the number of legal documents that were actually sent by the court…. Whether a person's injury is from a vaccine or not is a very obvious matter, screened at the beginning of a case, allowing the person to file their case and continue. Not only was the Petitioner allowed to file his case, the case received at least eighteen legal documents from the court in little over a year duration. How can there be that many documents from the Federal Claims Court if the injury was not a vaccine injury? To ask the Petitioner to show cause of injury at this point is a preposterous request, and thought to be a prank…. Petitioner has already claimed the expert report is contained in the medical test performed over past two consecutive years. But according to Dorsey, the court is not doubting the injury that took place, but seeking a *statement that the flu vaccine caused the* injury…. The 2019 Medical Test Report is being resubmitted since it contains the court's request of an Expert Report.

*Id.* at 1-2 (emphasis in the original).

This case was transferred to my docket on April 17, 2020. (ECF No. 46). This matter is now ripe for adjudication.

## III.   FACTUAL SUMMARY

In his Responsive Brief, Respondent sets forth a summary of facts which I find are generally accurate. Resp. Brief (ECF No. 40). The summary below is largely derived from Respondent's summary.

On October 4, 2017, Petitioner received the flu vaccine at CVS Pharmacy in Palmdale, California. (ECF No. 18 at 2). Petitioner underwent an MRI of the cervical spine on October 18, 2017, at Antelope Valley Hospital. (ECF No. 1-5 at 1). The clinical indication was "[n]eck pain." *Id.* The impression included "moderate disc height loss," "central disc protrusion indents the cord surface with mild spinal canal stenosis," and "[u]ncovertebral osteophytes with mild to moderate left and severe right foraminal stenosis" at C3-4; "retrolisthesis with moderate disc height loss" and "[u]ncovertebral osteophytes with severe bilateral foraminal stenosis" at C4-5 and C5-6; and "central disc protrusion [that] narrows the ventral thecal sac without significant spinal canal narrowing" at C6-7. *Id.* at 1-2.

On October 19, 2017, Petitioner presented to the emergency department of Palmdale Regional Medical Center, but the records list no specific complaints. (ECF No. 7-2 at 1-3). Petitioner had a "Medical Screening Exam, Nonurgent." *Id.* at 3. The results stated: "You have had a medical screening exam. The results show that you don't have a condition that needs to be treated in the Emergency Department." *Id.* The diagnosis listed was "Encounter for medical screening examination; Medication refill." *Id.* at 1.

On February 22, 2018, Petitioner saw a neurologist and underwent an EMG/NCS.[5] (ECF No. 1-6 at 1). The "Patient History" stated that Petitioner was a "60-year-old man with [right upper extremity] weakness following an episode of pain, after having received the flu vaccine." *Id.* Under the impression, the neurologist noted that this was "an abnormal study" and these "electrodiagnostic findings could suggest a sensory neuropathy/ganglionopathy." *Id.* at 2. The neurologist further noted that in "this clinical setting, Parsonage Turner syndrome could also be considered," but that the "[a]bsence of motor electrodiagnostic abnormalities could suggest that the patient has been recovering." *Id.* Petitioner was diagnosed with "[right upper extremity] weakness." *Id.* at 1.

More than one year later, on March 18, 2019, Petitioner underwent a second EMG/NCS. (ECF No. 19 at 1). The history stated that Petitioner was "a 61-year-old man with months of right upper extremity numbness involving the posterolateral hand and weakness that emerged following an episode of right upper extremity pain that occurred subsequent to a vaccination." *Id.* The impression was that this "study show[ed] multiple electrodiagnostic abnormalities." *Id.* at 2. Specifically, "[f]irst, there [was] electrodiagnostic evidence for a chronic neurogenic process affecting proximal branches of the right brachial plexus." *Id.* Those findings also suggested "an incomplete, patchy, proximal right radial neuropathy." *Id.* The "combination of findings, suggestive of patchy, potentially fascicular involvement of proximal branches of the brachial plexus, in the proper clinical context, could be consistent with a previous episode of neuralgic

---

[5] The referring physician was "Robert Lang, MD." (ECF No. 1-6 at 1). It is unclear whether the referring physician is Petitioner, or someone related to him.

amyotrophy."[6, 7]  *Id.*  The "abnormal findings on needle EMG . . . could be explained by a patchy, chronic, right C6 radiculopathy, the involvement of the sensory responses argues for a more peripheral lesion."  *Id.*  "Alternatively, a right upper trunk brachial plexopathy could explain some of the findings noted, but there would still be differential fascicular involvement given the sparing of the deltoid, brachioradialis, and flexor carpi radialis."  *Id.*  Next, "there [was] electrodiagnostic evidence for bilateral median mononeuropathies at the wrist, consistent with moderate carpal tunnel syndrome."  *Id.*  Finally, "there [was] some evidence for a right ulnar neuropathy at the elbow."  *Id.*  The "Active Problems" listed for Petitioner included bilateral carpal tunnel syndrome, musculocutaneous neuropathy, right radial neuropathy, and ulnar neuropathy at the elbow of the right upper extremity.  *Id.* at 1.

## IV.    LEGAL FRAMEWORK

### A.    Standards for Adjudication

The Vaccine Act was established to compensate vaccine-related injuries and deaths.  § 300aa-10(a).  "Congress designed the Vaccine Program to supplement the state law civil tort system as a simple, fair and expeditious means for compensating vaccine-related injured persons. The Program was established to award 'vaccine-injured persons quickly, easily, and with certainty and generosity.'"  *Rooks v. Sec'y of Health & Human Servs.,* 35 Fed. Cl. 1, 7 (1996) (quoting H.R. Rep. No. 908 at 3, *reprinted in* 1986 U.S.C.C.A.N. at 6287, 6344).

Petitioner's burden of proof is by a preponderance of the evidence.  § 300aa-13(a)(1).  The preponderance standard requires a petitioner to demonstrate that it is more likely than not that the vaccine at issue caused the injury.  *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010).  Proof of medical certainty is not required.  *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991).  In particular, Petitioner must prove that that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury."  *Moberly*, 592 F.3d at 1321 (*quoting Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352-53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006).  A petitioner who satisfies this burden is entitled to compensation unless Respondent can prove, by a preponderance of the evidence, that the vaccinee's injury is "due to factors unrelated to the administration of the vaccine."  § 300aa-13(a)(1)(B).

### B.  Causation

To receive compensation under the Program, petitioner must prove either: (1) that he suffered a "Table Injury"—i.e., an injury listed on the Vaccine Injury Table—corresponding to a vaccine that he received, or (2) that he suffered an injury that was actually caused by a vaccination. See §§ 300aa-13(a)(1)(A) and 11(c)(1); *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d

---

[6] Petitioner did not submit medical records for care and treatment prior to the vaccination date.  Therefore, it is unclear what "previous episode of neuralgic amyotrophy" is referring to.

[7] Neuralgic amyotrophy is pain across the shoulder and upper arm, with atrophy and paralysis of the muscles of the pectoral girdle.  Dorland's Illustrated Medical Dictionary 70 (33rd ed. 2020).

1317, 1319-20 (Fed. Cir. 2006). Petitioner must show that the vaccine was "not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly*, 592 F.3d at 1321 (quoting *Shyface*, 165 F.3d at 1352-53).

Because Petitioner does not allege that he suffered a Table injury, he must prove that the vaccine he received caused his injury. To do so, he must establish, by preponderant evidence: (1) a medical theory causally connecting the vaccine and injury ("*Althen* Prong One"); (2) a logical sequence of cause and effect showing that the vaccine was the reason for the injury ("*Althen* Prong Two"); and (3) a showing of a proximate temporal relationship between the vaccine and injury ("*Althen* Prong Three"). § 300aa-13(a)(1); *Althen*, 418 F.3d at 1278.

The causation theory must relate to the injury alleged. Thus, Petitioner must provide a reputable medical or scientific explanation that pertains specifically to this case, and although the explanation need not be medically or scientifically certain, it must still be "sound and reliable." *Boatmon v. Sec'y of Health & Human Servs.*, 941 F.3d 1351, 1359 (Fed. Cir. 2019) (citing *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548-49 (Fed. Cir. 1994)). Petitioner cannot establish entitlement to compensation based solely on assertions. Rather, a vaccine claim must be supported either by medical records or by the opinion of a medical doctor. § 300aa-13(a)(1). In determining whether petitioner is entitled to compensation, the special master shall consider all material contained in the record, including "any . . . conclusion, [or] medical judgment . . . which is contained in the record regarding . . . causation." § 300aa-13(b)(1)(A). I must weigh the submitted evidence and the testimony of the parties' offered experts and rule in Petitioner's favor when the evidence weighs in his favor. *See Moberly*, 592 F.3d at 1325-26 ("Finders of fact are entitled—indeed, expected—to make determinations as to the reliability of the evidence presented to them and, if appropriate, as to the credibility of the persons presenting that evidence"); *see also Althen*, 418 F.3d at 1280 (providing "close calls" are resolved in Petitioner's favor).

## V.    DISCUSSION

### A.  Defined and Recognized Injury

Petitioner must show by preponderant evidence at least one defined and recognized injury. *See* § 300aa-11(c)(1)(C)(ii)(I) (requiring that for an off-Table injury, Petitioner must allege that he "sustained, or had significantly aggravated, any illness, disability, injury, or condition not set forth in the Vaccine Injury Table but which was caused by a Vaccine referred to in subparagraph (a)"); *Lombardi v. Sec'y of Health & Human Servs.*, 656 F.3d 1343, 1353 (Fed. Cir. 2011); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345-46 (Fed. Cir. 2010).

Petitioner submitted a "Timeline of Vaccine Injury" with his petition for compensation. (ECF No. 1-8). The "Timeline of Vaccine Injury" was written by Petitioner and contains his recollections and assertions of what transpired after he received the flu vaccination. According to Petitioner's timeline, on October 15, 2017, he diagnosed himself with brachial neuritis after asserting that his symptoms matched the symptoms listed on WebMD for the condition. *Id.* at 2. However, Petitioner's medical records, showing he presented to two hospitals on October 18 and 19, 2017, do not document a diagnosis of brachial neuritis. (ECF No. 1-5 at 1); (ECF No. 7-2 at 1-3). On February 22, 2018, Petitioner saw a neurologist, who noted Petitioner's right upper

extremity weakness following an episode of pain could be Parsonage Turner syndrome.  (ECF No. 1-6 at 1).  However, the neurologist diagnosed Petitioner with right upper extremity weakness after noting that the "[a]bsence of motor electrodiagnostic abnormalities could suggest that the patient has been recovering."  *Id.* at 1-2.

After review of Petitioner's medical records, Respondent contends that the correct diagnoses are patchy, chronic, right C6 radiculopathy (as determined by the October 18, 2017 MRI), bilateral median neuropathies at the wrist consistent with carpel tunnel syndrome (as shown in the March 18, 2019 EMG/NCS), and a right neuropathy at the elbow (also shown in the March 18, 2019 EMG/NCS).  *See* (ECF No. 1-5 at 1); (ECF No. 19 at 1-2).

Upon review of the records, I find that several diagnoses have been suggested.  These include sensory neuropathy/ganglionopathy, Parsonage Turner syndrome (brachial neuritis), chronic right C6 radiculopathy, and carpal tunnel syndrome.  While the records show that brachial neuritis has been identified as a possible diagnosis, they do not provide preponderant evidence that Petitioner has been diagnosed with a brachial neuritis injury.

Furthermore, Petitioner has no provided evidence of causation, or evidence comporting with the *Althen* requirements.

### B.  *Althen* **Prong One: Medical Theory of Causation**

Under *Althen* prong one, Petitioner must set forth a medical theory explaining how the flu vaccination caused brachial neuritis.  *Althen*, 418 F.3d at 1278.  The theory of causation must be informed by a "sound and reliable medical or scientific explanation."  *Boatmon*, 941 F.3d at 1359; *Knudsen*, 35  F.3d at 548; *see also Veryzer v. Sec'y of Health & Human Servs.*, 98 Fed. Cl. 214, 223 (2011) (noting that special masters are bound by both § 300aa-13(b)(1) and Vaccine Rule 8(b)(1) to consider only evidence that is both "relevant" and "reliable").

Petitioner did not provide any medical or scientific explanation for how the flu vaccination caused his alleged injury.  Petitioner submitted his own assertions and observations about the clinical course of his injury and medical records that contained no "explanations"—only observations and findings of upper right extremity weakness.  *See* (ECF No. 1-6, 1-8).

Additionally, Petitioner failed to submit an expert report.  Instead, Petitioner contends that the statement from his medical records, "[t]his is a 61-year-old man with months of right upper extremity numbness involving the posterolateral hand and weakness that emerged following an episode of right upper extremity pain that occurred subsequent to a vaccination" is his expert report. Pet. Report at 2 (ECF No. 42); (ECF No. 19 at 1).  However, this statement from his doctor is not a "medical or scientific explanation" of how the flu vaccination caused the alleged injury. There is no medical or scientific theory connecting the injury to the vaccination, merely a recitation of patient history that indicates Petitioner's weakness occurred subsequent to a vaccination.  The special master and Court are statutorily mandated not to "make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." § 300aa-13(a)(1). Therefore, because there is no medical opinion for me to consider and no evidence to show causation, the Petitioner has not proved his burden under the first *Althen* prong.

### C. *Althen* Prong Two: Logical Sequence of Cause and Effect

Under *Althen* prong two, Petitioner must prove by a preponderance of the evidence that there is a "logical sequence of cause and effect showing that the vaccination was the reason for the injury." *Capizzano*, 440 F.3d at 1324 (quoting *Althen*, 418 F.3d at 1278). Petitioner must show "that the vaccine was the 'but for' cause of the harm . . . or in other words, that the vaccine was the 'reason for the injury.'" *Pafford*, 451 F.3d at 1356 (citations omitted).

Here, Petitioner has not provided evidence to show the vaccine was the "but-for" cause of his injury. Despite being ordered to do so, Petitioner did not file medical records for three years prior to his vaccination as required by the Court's guidelines. *See* Guidelines for Practice Under the National Vaccine Injury Compensation Program at 13-14. Therefore, it is not possible for the Court to ascertain Petitioner's condition prior to the vaccination at issue. That is, it is not possible to know whether the vaccine caused Petitioner's alleged injury, or if the condition pre-dated the vaccination.

Additionally, "[a] persuasive medical theory is demonstrated by 'proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury[,]' the logical sequence being supported by 'reputable medical or scientific explanation[,]' *i.e.*, 'evidence in the form of scientific studies or expert medical testimony.'" *Althen*, 418 F.3d at 1278 (citing *Grant*, 956 F.2d at 1148). Petitioner did not submit an expert report in support of his allegations. Special masters are prohibited from finding in favor of entitlement "based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion." § 300aa-13(a)(1). Therefore, without the medical records and expert report ordered by the Court, I cannot find that Petitioner proved his burden under *Althen* prong two.

### D. *Althen* Prong Three: Proximate Temporal Relationship

Under *Althen* prong three, Petitioner must provide "preponderant proof that the onset of symptoms occurred within a timeframe for which, given the understanding of the disorder's etiology, it is medically acceptable to infer causation-in-fact." *De Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008). The acceptable temporal association will vary according to the particular medical theory advanced in the case. *See Pafford*, 451 F.3d at 1358. A temporal relationship between a vaccine and an injury, standing alone, does not constitute preponderant evidence of vaccine causation. *See, e.g., Veryzer*, 100 Fed. Cl. at 356 (explaining that "a temporal relationship alone will not demonstrate the requisite causal link" and there must be "a medical theory causally connecting the vaccine and injury").

Petitioner's medical records do not show a medically-appropriate timeframe to establish vaccine causation. Petitioner visited Antelope Valley Hospital and Palmdale Regional Medical Center emergency department approximately two weeks after receiving the flu vaccine. Petitioner's records from those visits do not provide any discernable diagnosis of brachial neuritis. Records do show that four-and-one-half months post-vaccination, on February 22, 2018, Petitioner complained of pain followed by weakness "after having received the flu vaccine." (ECF No. 1-6 at 1). It is not clear from this record when Petitioner's pain began, only that it began "after" he

received the flu vaccine.  (Although I will note that a period of four months is too remote to infer vaccine causation).  Even if this medical record were clear as to the onset of pain, no medical expert has articulated what the appropriate onset interval is for Petitioner's painful condition.

On March 18, 2019, Petitioner underwent a second EMG/NCS.  (ECF No. 19 at 1).  The second EMG/NCS diagnosed Petitioner with bilateral carpal tunnel syndrome, musculocutaneous neuropathy, right radial neuropathy, and ulnar neuropathy at the elbow of the right upper extremity.  *Id.*  Petitioner has not submitted any medical records to show the onset of his carpal tunnel syndrome and various neuropathies began earlier than over one year after vaccination.  Because these conditions were diagnosed over one year after the vaccination, and there are no other medical records to substantiate when the onset of those conditions began, I find the evidence of Petitioner's onset of injury fails to establish a medically appropriate timeframe to infer causation-in-fact.

## VI.    CONCLUSION

For all of the reasons discussed above, I find that Petitioner did not establish by preponderant evidence that he is entitled to compensation; accordingly, his petition must be dismissed.  In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

A copy of this Decision shall be mailed to Petitioner via Federal Express at the following address:

Robert J. Lang
P.O. Box 384
Lancaster, CA 93584

**IT IS SO ORDERED.**

Dated: April 27, 2020

Katherine E. Oler
Special Master